Opinion of th'o Court, by
Judge Mill's.
THIS is á bill filed asserting the validity of an entry against an elder grant, and twenty years’ adverse possession is relied on as a bar to 'the relief prayed.
The proof is contradictory as to the date of settlement; some witnesses prove it to have been more, and éome less than twenty years before the commencement ■of the suit.
(1) We are, however, relieved from deciding be-'tween these witnesses, by another point in the cause, The appellee was not the patentee, but bolds aconvey-ance from him, of part of a larger tract, executed in 1789; and all the testimony agrees that the adverse settlement relied on, was long since that period;- and ^leire no Pro°f the cause, that the adverse settle-ment relied on was within the line's of the appellee, Who was complainant below; and it is rather to be in-r ferred» that it was not within his lines, although there' Is proof that it was within the lines of both the claims now in contest.
Admitting, then, that the adverse claimant did enter within the interference, in due time, and on that part of the land retained by the junior patentee, and not conveyed to the complainant, - the entry thus made could not bar or prejudice the complainant. After liis Conveyance, the claim was several, and his right might be adverse to his own grantee, and nó laches on the part of the patentee, in not pursuing his rights in time against an adverse holder, could operate against the complainan!; but an entry on-his part was necessary also. The merits of the claims must, therefore; be in- *139 vcstigated; or, rather, the merits of! the claim sot up * ' ■ -•*«*■*• * - their by the complainant; for the defendants rely on _ elder grant, and. have not attempted to sustain their entry. The entry set up by the complainant is to this effect:.
ores, held valid. J°Iia f)ur-„f ot; a-^ , ’ - - -
Linn, Barbour’&.Wil-Hams’ entry-of. b°00aci'e3-
(g) The ‘ Big-Blue-Lick oil kicking,’ isa cription ofS ‘ Upper Licking,’ J^ere being °
rpbe <L0Wfir Blue-Licks,’ do ™°" ” Upper Blue-Lick,’ for the call ¡¶. this entry for the ‘ Big Blue-Lick,’ without evidence in the record.
*139 ■ “January 2?., 1783 — John Durham, assignee of John Ilurton, enters 2,0,35 acres of land, on treasury warrant No. &c. to begin at the lower corner of William Linn and John Williams’ entry, on the upper salt spring on Licking creek, and. running thence down the north side of said creek, and binding on the same, as far as will-amount to two miles, when, reduced to a straight line; thence extending-from each end of said reduced line, a northwardly course, at right angles, for quantity.”
The entry set up by the appellee, as.called for in this entry, and fixing the point of beginning, reads thus:
“ June 22d, 1780-rr-William Linn, James Barbour and John Williams, entor 1,000 acres upon a pre-emptior; warrant, beginning one fourth ofa mile below the Big Blue-Lick, on .Licking, on the south side thereof, running on both sides of the said,creek, and east and south, for quantity.”
It is contended, that- this entry cannot be sustained, and if it can, that it will not suit the locative cails of the appellee’s entry.
(2) Of the notoriety of Licking, there is. no doubt, and it is proved that the Blue-Lick was notorious long before, and at the date of this entry, and that it. was equally well known by the names of Upper Blue-Lick or Upper Salt Spring on Licking. Ther.e is no in this cause, that it was known by. the discriminating appellation, “ the Big Blue-Lick.” It is, shown, that it isa large spring, or lather two springs discharging themselves into one basin, situated south of the river Licking, a few yards from the stream, and discharging itself into it. This would be a sufficient description of an unrivalled object, especially such an unusual one asa large salt spring,, which was and must, be singular.
It is urged, however, that it is rivalled by a.similar object, several miles below it, and that this object is intimated in the complainant’s entry.
There is no proof in the cause, of the notoriety of the .Lower Blue-Licks; and to supply this, it is urged, that they are objects that have been, held notorious by this *140 court, without proof, as part of (be history of the cobh-try.
The Lower Blae-Licks have been held ge.ogra^ phieally notorious, but not sq early as 17ti0.
If the court, from general geography & history, held the Lower Blue Licks notorious in 1780, they would notice the number, situation and perhaps sizeof the spring & conclude that the place did not -is well Suit ihe call for the 1 dig Blue Lick,’, as the ‘Upper Biui IjÍCK.’
(3) The party opposing an entry ought to show 'hut the object he sets up as the rival, suits the call e-qunlly as well as that claimed by the owner of the entry.
(4/The entry of .jiiia, &e. psight be held valid at tiie I^o-yvor Bluer Hicks, or l>e oertTir/Vml* yet be a/.ii-cd to the up-ji^e'bp’-in-n^nu. of lfur-ham’s entry, there/11 ^
*140 it is true, these objects have been so held with re- ■ gard to entries of a later date than the present. Whether they should be taken as historically notorious, as early as June 1780, has never been decided.
But, assuming it for the present that they .wore to be so taken, the same history tells us that there are two. of idem, one on each side of the river, and nearly opposite to each other; and if the entry of Linu, Williams and Barbour is applied to the river at the lower Licks, it will probably include both of these, when it shows its object to be a solitary large spring.
Besides, the lower Licks are not shown, either of them, to be equal in size'with the upper. Whether we can, from historical information, uotice the comparative difference between these two, or father three springs, is a questionable matter, which it is not necessary -now to decide.
(3) For if we are not to know it historically, the party opposing this entry ought to have shown that the rival object suited the call equally well,
And if we are to know it, we might be disposed to say, that the lower springs were not equal in size, and til'd not so well answer the description, “ (lie Big Blue-Lick.” We, therefore, conclude that the upper Lick was intended by (his entry, and that by the subsequent calls, t‘on both sides of the creek, and east and south tor quantity,” the locator intended to appropriate the Lick and some adjacent land, ■
The description may be somewhat aided by the words, ‘‘ on the south side thereof.” ft is true, these expressions are somewhat equivocal, and applied to tiie last antecedent, Licking, might be supposed to fix the beginning, and not to describe the Lick on the south side. It is, however, probable, that the last was the meaning intended.
■But this construction is not much relied oh; for if tiie entry of the complainant can be attached to this entry at all, it solves the doubt, by showing that the upper sail spring was intended by him.
(4) And if it be granted, that Durham’s entry has sufficiently described the entry of Linn, Williams and Barbour, as a good locative call, and it shall also be granted, thqt the latter entry woqld fit the lower as *141 well as the upper spring, or indeed should better suit the latter, it might be safely contended, that still Durham’s entry should be .sustained, and that the entry of Lian, &c. should be applied to the upper spring, barely for the purposeof ascertaining the beginning of Dur-1mm, and (hat Durham must }ie at that point, let the entry of Linn and others lie where it might, as to its own validity; especially when it is seen, by reading the two entries, that all the aid that Linn, Williams and JBarbour can give to Durham, is merely to fix the point of one fourth of a mile below the Lick; and Durham tells us plainly, that it is the upper Lick he intends, and all the aid he asks from Linn, &c. is to fix his distance below it.
(5) The call foJ 5,® entry jjinn & j0hn Williams,isa sufficient call william 7 j.inn, James Harbour and j^s (he circum-' stances of th*3 case"
(5) The cuestión, then, must rest upon the inquiry, whether the call ir> Durham sufficiently describes the entry he claims. Here is not an erroneous or mistaken description. The entry is in the names of Linn and Williams, and their given names are truly stated, as a discriminating matter. The only difficulty, then, which lie has to encounter, is the omission of the name of Barbour, He has gone right so far as he did go; but is his omission in not being so accurate as he might have been, to destroy the call? Or, in other words, does the omission of Barbour’s name raise such a presumption against him, as to destroy the belief that he intended this entry, and to lay upon him the proof of a negative, that there was no such entry, omitting the name of Barbour, on the stream? We conceive not. We cannot presume that Linn and Williams would locate either Lick in tl;eir own names, after or before they had located it jointly with Barbour.
There is, then, no ground of presumption that there is another entry, omitting the name of Barbour, and the one shown was the one intended, and sufficiently described to put subsequent locators on their guard.
It piayalso be an idea of some weight, that Linn’s name, expressed by Durham, was the first named in the adjoining entry; and it is most natuial to suppose that the surveyor, in making the alphabetical index, would use that name as the one to point to the place where the entry was recorded, and thus a subsequent locator would have found it, on searching the books. This call, therefore, we deem a good one.
fC) Tho call from tho beginning, ‘thence down tho north side of said creek, & binding on the same,’ shows the beginning was intended to be or; the stream.
Crittenden, for plaintiffs; Hoggin, for defendant-.
(6) One other defect in Durham’s entry will'be noticed. It calls for Linn and Williams’ lower corner,, and not their beginning. To this it may be replied, that his subsequent calls, “ down the north side of the liver and binding on the same,” show that he intended his beginning to be on the stream, and, of course, it would-be the lower corner.
Besides, wc conceive it is the correct construction of Linn, Barbour and Williams, to begin at the point one fourth of a mile below, and then to run east and south, in a square, and they will include both sides of the stream, as called for. This will fi? their corner at a proper point.
There can be no doubt how Durham’s entry must be surveyed. Its directions in this respect need no construction. The court below, tnerefore, did rigid in sustaining the entry, and the decree must be affirmed with costs.